# EXHIBIT A

# EXHIBIT A

# AFFIDAVIT OF XIAOMIN CHEN, ESQ.

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE
------------------------------------------------------------------x
CHINA THREE GORGES PROJECT CORPORATION,　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Petitioner,　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　: Case No. 04-1510 JJF
　　　　　-against-　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
ROTEC INDUSTRIES, INC.,　　　　　　　　　　: **AFFIDAVIT**
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Respondent.　　　　:
------------------------------------------------------------------x


STATE OF NEW YORK　　　　　　)
　　　　　　　　　　　　　　　　) ss:
COUNTY OF NEW YORK　　　　　)

Xiaomin Chen, Esq., an attorney admitted in New York, being duly sworn, deposed and

affirms:

1.　　　I am the managing partner of DeHeng Chen Chan, LLC, attorneys for

　　　　Petitioner, am fully familiar with the facts of the case, and submit this

　　　　affidavit in support of Petitioner's request for attorneys' fees, post-arbitration

　　　　interest and an amendment of the judgment amount.

2.　　　Petitioner China Three Gorges Project Corporation ("Three Gorges") has paid

　　　　a flat legal fee of $200,000.00 to DeHeng Chen Chan for its work in this case.

3.　　　As a Global Partner of DeHeng Law Offices, which has its main office in

　　　　Beijing, China, I am also familiar with the legal work performed by attorneys

　　　　at DeHeng's Beijing Office on behalf of Three Gorges in connection with this

　　　　case. Three Gorges has paid to DeHeng's Beijing Office a flat legal fee of

　　　　$6,175.05 (the equivalent of RMB ¥50,000.00 at the exchange rate of $1 =

　　　　RMB ¥8.0971 on August 16, 2005) for its legal work in this case.

1

4.      The full arbitration award is RMB ¥32,755,375.89, out of which RMB ¥11,242,467.98 has been enforced in China, leaving RMB ¥21,512,907.91 or its equivalent in U.S. Dollars to be enforced here in the United States.

5.      The exchange rate between the RMB and the U.S. Dollar changed significantly on July 21, 2005. During the decade before the change the exchange rate between the RMB and the U.S. Dollar remained at RMB ¥8.27-8.28 equal to 1 U.S. Dollar. After July 21, 2005, the RMB has risen steadily in its value against the U.S. Dollar, to as high as RMB ¥8.0971 equal to 1 U.S. Dollar as of today. As the RMB is still generally thought to be artificially undervalued, it is likely that the value of the RMB against the U.S. Dollar will continue to rise in the near future. Petitioner will need to convert any dollar payment from Respondent into the RMB due to the foreign currency control by the Chinese government, and Petitioner should not be penalized by any losses in RMB terms because of Respondent's unjustified refusal to comply with the arbitration award.

6.      The balance of the outstanding arbitral award, RMB ¥21,512,907.91, is equivalent to **$2,656,865.78** at the exchange rate of RMB ¥8.0971 equal to 1 U.S. Dollar as of August 16, 2005. We ask the Court to adjust the judgment amount to this number.

7.      The post-arbitration interest accrued before July 21, 2005 is $237,486.90, which is the principal, $2,599,747.18 (using an average exchange rate at RMB ¥8.275 = 1 U.S. Dollar), times the prescribed interest rate, .021% per day, times the number of days, 435 (May 13, 2004 to July 21, 2005, both dates

2

included).  The post-arbitration interest accrued from July 21, 2005 to date is
$14,506.49, which is the principal, $2,656,865.78, times .021%, times the
number of days, 26.  The interest accrued to date, therefore, is **$251,993.39**
($237,486.90 + $14,506.49 = $251,993.39).

8.       For each additional day after August 16, 2005 and before Respondent pays off
the principal, the daily accrued interest is **$557.94** ($2,656,865.78 x .021%).
We ask the Court to add such additional accrued interest to the total amount of
interest when the Court issues its order on interest.


Dated: New York, New York

August 16, 2005


Xiaomin Chen


Sworn to before me this

_16th_ day of _August_.


Notary Public


Azra Kolenovic
Notary Public, State of New York
No. 01KO6113563
Qualified in Kings County
Commission Expires August 2, 2008

3

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.

# EXHIBIT B

LEXSEE 2002 U.S. DIST. LEXIS 34

**VON ESSEN, INC., Plaintiff, v. MARNAC, INC., Defendant.**

**Civil Action No. 3:00-MC-73-L**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

*2002 U.S. Dist. LEXIS 34*

**January 2, 2002, Decided**
**January 2, 2002, Filed; January 3, 2002, Entered**

**DISPOSITION:** [*1] Plaintiff's first amended motion to confirm arbitration award and enter judgment was granted in part and denied in part. Defendant's motion to vacate arbitration award denied, and plaintiff's motion to strike affidavit testimony were denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, payee of royalties moved to confirm an arbitration award for entry of judgment based on the award, and to strike affidavit testimony submitted by the defendant patent holder. The patent holder moved to vacate the award, arguing that the award violated public policy, that deposition testimony initially taken without notice to defendant, and that the arbitrator was asleep through part of the testimony.

**OVERVIEW:** The arbitrated dispute involved the interpretation of the parties rights and duties under a written contract. The payee maintained it was due royalty and other payments based upon the patent holder's receipts for certain of its patents. The payee deposed its ill president to preserve his testimony, but failed to give prior notice to the patent holder. The patent holder later cross-examined the president with a copy of the videotaped deposition, but sought to further depose him when the president was too ill to be deposed. The patent holder then moved to strike the president's entire testimony as improper ex parte testimony. The arbitrator denied the motion, and entered a substantial award in favor of the payee. The patent holder argued the use of the deposition testimony was improper, that the arbitrator slept through part of the hearing, and that the award violated public policy created by federal patent law. The court affirmed the award. By failing to raise the sleeping issue in the hearing, the patent holder waived that argument. The patent misuse doctrine did not apply. The award was

entitled to deference. Conformity with evidentiary rules was not required.

**OUTCOME:** The motion to confirm the arbitration award was granted. Attorney's fees and costs beyond those awarded by the arbitrator to the payee was denied. The motion to strike affidavit testimony was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
[HN1] Judicial review of an arbitration award is extraordinarily narrow and a court should defer to the arbitrator's decision when possible.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
[HN2] See *9 U.S.C.S. § 10*(a).

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
[HN3] Parties to voluntary arbitration may not superimpose rigorous procedural limitations on the very process designed to avoid such limitations. Thus, whatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so.

*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
[HN4] Conformity to legal rules of evidence is not necessary in an arbitration hearing. Am. Arb. Ass'n. R. 33.

*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*

2002 U.S. Dist. LEXIS 34, *

[HN5] Am. Arb. Ass'n. R. 34(a) provides that the arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*

[HN6] The proposition that an arbitration award can be vacated if it violates public policy appears to arise exclusively in cases where parties seek to vacate arbitration awards that relate to labor disputes and the corresponding interpretation of collective-bargaining agreements. Accordingly, it is not clear whether the public policy exception is intended to apply to arbitration awards that do not arise out of labor disputes.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Enforcement*

[HN7] A court may refuse to enforce a collective-bargaining agreement when the specific terms contained in the agreement violate public policy, but that rule does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy.

*Patent Law > Inequitable Conduct > Anticompetitive Conduct*
*Patent Law > Ownership > Conveyances > Royalties*
*Patent Law > Remedies > Bad Faith Enforcement*

[HN8] The patent misuse doctrine mandates that any attempted reservation or continuation in the patentee or those claiming under him of the patent monopoly, after the patent expires, whatever the legal device employed, runs counter to the policy and purpose of the patent laws. Accordingly, a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se. This doctrine becomes relevant in scenarios where a patentee licenses others to use his patent, for a royalty fee, and attempts to continue collecting the fee after his patent has expired.

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN9] Under the American rule of attorney's fees, parties are generally not entitled to attorney's fees unless they contracted for the fees or a statute expressly provides for the fees. This principle applies to a party's attempt to confirm an arbitration award.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*

[HN10] Where the parties agree to arbitrate under the American Arbitration Association (AAA) rules, and the rules contemplate binding arbitration that permits a federal court to enter judgment on an arbitration award, such arbitration under the AAA rules contemplates confirmation of the arbitration award by a federal court. *9 U.S.C.S. § 9.*

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

[HN11] In accordance with *Fed. R. Civ. P. 54(d)(2)*, a prevailing party must submit appropriate documentation that sets forth the number of hours reasonably expended in relation to any motions subsequent to an arbitrator's award evidence establishing a reasonable hourly rate for its attorneys, and a bill of costs. Once a district court reviews such materials, it will issue a separate judgment as permitted under *Fed. R. Civ. P. 54(d)*.

**COUNSEL:** For VON ESSEN INC, plaintiff: James H Baumgartner, Attorney at Law, Vial Hamilton Koch & Knox, Dallas, TX USA.

For MARNAC INC, defendant: Charles R McConachie, Attorney at Law, Simpson Woolley & McConachie, Dallas, TX USA.

**JUDGES:** Sam A. Lindsay, United States District Judge.

**OPINIONBY:** Sam A. Lindsay

**OPINION:**

**ORDER**

Before the court is Plaintiff Von Essen, Inc.'s First Amended Motion to Confirm Arbitration Award and Enter Judgment ("Motion to Confirm"), filed October 18, 2000; Defendant Marnac, Inc.'s Motion to Vacate Arbitration Award ("Motion to Vacate"), filed October 2, 2000; and Von Essen, Inc.'s Motion to Strike Affidavit Testimony, filed October 23, 2000. After careful consideration of the motions, responses, briefs, evidence submitted by the parties, and applicable law, the court **grants in part** and **denies in part** Von Essen, Inc.'s Motion to Confirm, **denies** Marnac, Inc.'s Motion to Vacate, [*2] and **denies** Von Essen, Inc.'s Motion to Strike Affidavit Testimony.

**I. Facts and Procedural Background**

Von Essen, Inc. ("Essen Inc.") and Marnac, Inc. ("Marnac") arbitrated a contract dispute in July and August 2000. The arbitration was conducted in Dallas, Texas under the American Arbitration Association (AAA) rules. The arbitrated dispute involved the interpretation of the parties rights and duties under a written contract.

Essen Inc. prepared for the arbitration by taking the sworn videotaped testimony of Clyde Von Essen ("Essen"). Essen was the president of Essen Inc., and lived in

Sacramento, California. Essen was primarily confined to his Sacramento home because he was diagnosed with terminal cancer. Essen Inc. took his testimony to preserve it in the event Essen could not testify at the arbitration proceeding in Dallas. Essen gave approximately sixteen hours of testimony.

Essen Inc. initially did not inform Marnac that it was taking Essen's testimony. It disclosed this information after Marnac's attorney indicated that "Should [Essen Inc.] decide to take some sort of statement to preserve . . . Essen's testimony, [Marnac's attorney] will, of course, want to [*3] attend and conduct . . . trial cross examination." Brief in Support of Motion to Vacate at 5 (internal quotations omitted). Marnac's attorney made this request on March 27, 2000, and on March 28, 2000, Essen Inc. informed him that it had already videotaped Essen's testimony.

The arbitration preliminary hearing was also conducted on March 28, 2000. The arbitrator was told about the videotaped testimony. He therefore instructed Essen Inc. to give Marnac's attorney a copy of the testimony. Essen Inc. complied and: 1) on March 31, 2000, provided a transcript of the entire testimony; 2) on June 13, 2000, provided the prospective script that Essen Inc. intended to use to present Essen's testimony during the arbitration; and 3) on June 23, 2000, provided the actual excerpted videotaped testimony that Essen Inc. planned to present to the arbitrator. Marnac's attorney deposed Essen in April 2000, and was able to review the transcript of Essen's testimony before he conducted the deposition. n1 The attorney took Essen's deposition over two days, and amassed approximately five hours of testimony. He thereafter deposed additional Essen Inc. officers.

n1 Marnac's attorney was also able to review the scripted testimony and excerpted videotape before the arbitration was conducted.

[*4]

The attorney wanted to, but could not conduct a follow up deposition of Essen, because the attorney was scheduled to begin an unrelated antitrust trial. The trial was scheduled to last two months, but it ultimately settled on the morning of the trial. Accordingly, in June 2000, the attorney requested to further depose Essen. By that time, Essen was too ill and could not be deposed. Marnac therefore moved the arbitrator to exclude Essen's testimony on the ground that it was improper *ex parte* testimony. The arbitrator denied the motion, and the arbitration proceeded.

Marnac contends that during a portion of the arbitration, the arbitrator fell asleep. Marnac further contends that the evidence adduced during this portion of the proceeding was material to its case. The record does not reflect that during the arbitration Marnac objected that the arbitrator was asleep.

Finally, Marnac filed a brief during the arbitration, which asserted that an arbitration award in favor of Essen Inc. would violate public policy created by federal patent law. The arbitrator rejected Marnac's argument, and, on or about August 23, 2000, entered an award in favor of Essen Inc.

Essen Inc. moves to confirm [*5] the award. Marnac, however, moves to vacate on the grounds that: 1) the arbitrator improperly admitted Essen's videotaped testimony, 2) the arbitrator committed misconduct when he allegedly fell asleep, and 3) the award violates public policy created by federal patent law. The following analysis resolves both motions.

**II. Standard of Review**

"[HN1] Judicial review of an arbitration award is extraordinarily narrow and [a court] should defer to the arbitrator's decision when possible." *Antwine v. Prudential Bache Sec., Inc., 899 F.2d 410, 413 (5th Cir. 1990).* [HN2] A district court may vacate an arbitration award under the following circumstances:

> (1) Where the award was procured by corruption, fraud, or undue means.
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that [*6] a mutual, final, and definite award upon the subject matter submitted was not made.
> (5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

*9 U.S.C. § 10* (a). These considerations are designed to guide the court's inquiry into "whether the arbitration proceeding[] [was] fundamentally unfair." *Forsythe Int'l, S.A., v. Gibbs Oil Co., 915 F.2d 1017, 1020 (5th Cir. 1990).*

### III. Application

#### A. Essen's Videotaped Testimony

Marnac moves to vacate the award because the arbitrator admitted Essen's videotaped testimony although Marnac's attorney was not present when the testimony was given. Motion to Vacate at 5. This request ignores that "as a speedy and informal alternative to litigation, arbitration resolves disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials." *Forsythe, 915 F.2d at 1022.* Accordingly, "[HN3] parties to voluntary arbitration may not superimpose rigorous procedural limitations on the very process designed [*7] to avoid such limitations." *915 F.2d at 1022.* "Thus, whatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so." *Id.*

The admission of Essen's testimony does not invoke a statutory basis to vacate Essen Inc.'s arbitration award. The rules that governed the arbitration provide that "[HN4] conformity to legal rules of evidence shall not be necessary." AAA rule 33. n2 [HN5] The rules further provide that "the arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission." AAA rule 34(a). Marnac does not deny that the foregoing rules governed the arbitration. It nevertheless argues that the admission of Essen's testimony, in accordance with these rules, was fundamentally unfair and evinced misconduct by the arbitrator. The court disagrees.

    n2 A copy of the AAA rules may be found at Tab F to Plaintiff's Appendix, filed October 23, 2000.

[*8]

Marnac voluntarily agreed to arbitrate under the AAA rules. It therefore voluntarily forfeited the procedural protections that exist under federal evidentiary and procedural rules. As a result, Essen Inc. prepared for the arbitration by taking Essen's testimony in a manner that did not offend the AAA rules, although possibly offensive to federal rules. Further, the arbitrator considered

Marnac's objection to the testimony, but nevertheless admitted it as he was permitted to do by the AAA rules.

It is therefore unreasonable for Marnac to contend that the arbitration was fundamentally unfair, given that Marnac consented to the AAA rules and the arbitration was conducted in accordance with the rules. Marnac's argument assumes that the court will ignore these facts when it evaluates whether the arbitration was fundamentally unfair. If the court did so, it would frustrate the liberal standards that governed the arbitration, and violate the strict limitations that *9 U.S.C. § 10*(a) places on the court's ability to vacate the arbitration award. The court would also have to find that the AAA rules caused a fundamentally unfair arbitration, even though they were applied [*9] as written and agreed to by the parties. This asks the court to go too far, because this did not occur under the present facts. Marnac bargained for arbitration under the AAA rules, and that is exactly what it received. The court does not find fundamental unfairness in that. As such, there is no statutory basis to vacate the award, and Marnac has not demonstrated that the arbitration was fundamentally unfair. n3

    n3 The court alternatively finds that the arbitration was not fundamentally unfair or subject to vacatur because Marnac's attorney was given the videotape transcript before he deposed Essen. Additionally, in advance of the arbitration, he was told how Essen Inc. planned to present Essen's testimony. Accordingly, any unfairness that arguably arose from the *ex parte* testimony was mitigated. In fact, Marnac could have addressed the significant portions of Essen's testimony when its attorney deposed him over the five hour period in April 2000.

    Further, AAA rule 34(a) *mandated* that the arbitrator adjust the weight given to Essen's testimony in light of the fact that Marnac objected that the testimony was improper. Marnac offers no indication that the arbitrator failed to so adjust the weight of the testimony. In light of these findings, the court does not have grounds to conclude that the arbitration was fundamentally unfair or to vacate the award pursuant to *9 U.S.C. § 10*(a).

[*10]

#### B. The Sleeping Arbitrator

Marnac moves the court to vacate the arbitration award because the arbitrator allegedly slept through a portion of the arbitration. Motion to Vacate at 5. Marnac contends that this alleged behavior constituted misconduct under *9 U.S.C. § 10*(a)(3). *Id.* at 6. The court does

not resolve whether this claim has merit. Instead, the court finds that Marnac waived this argument because, during the arbitration, it did not object that the arbitrator was asleep. *See generally Weinberg v. Silber, 140 F. Supp. 2d 712, 718, 721 (N.D. Tex. 2001); Gateway Techs., Inc. v. MCI Telecomms. Corp., 64 F.3d 993, 997-98 (5th Cir. 1995)* (holding that a party to arbitration "cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court.").

Marnac attempts to excuse its waiver by asserting that its attorney was not aware that the arbitrator was sleeping. Defendant's Surreply at 19. n4 Marnac therefore contends that it could not have knowingly waived its right to presently raise this issue. *Id.* For two reasons, this does not alter the court's [*11] conclusion that Marnac waived this issue. First, Robert H. Lexvold ("Lexvold") is the Executive Vice President of Marnac, and he testified on behalf of Marnac at the arbitration. He contends, by affidavit, that he observed the arbitrator sleeping. *See* Motion to Vacate, Tab 3 at 2-3. Lexvold, as Marnac's Executive Vice President, sufficiently represented the interests of Marnac that if he did not object that the arbitrator was asleep, or if he did not have Marnac's attorney object, he waived this issue on behalf of Marnac. If the court held otherwise, it would be rewarding Marnac's decision to wait until it lost the arbitration to raise an issue that could have been addressed during the arbitration.

> n4 This document was filed November 15, 2000, and is titled "Defendant's Reply Brief to 'Brief in Support of Plaintiff's Reply to Defendant's Response to Motion to Confirm Arbitration Award and Enter Judgment and In Support of Plaintiff's Response to Defendant's Motion to Vacate Arbitration Award.'"

Second, Marnac's [*12] assertion that its attorney was not aware that the arbitrator was sleeping is not credible, or indicative of the fact that the arbitrator was in fact not sleeping. The court does not accept that Lexvold noticed that the arbitrator was asleep, but never relayed this information to Marnac's attorney. Reason leads the court to believe that Lexvold would have been vigilant about ensuring that Marnac's interests were protected during the hearing, because as Marnac's Executive Vice President, he had the unique ability to act as the eyes and ears of Marnac. It is therefore difficult to believe that Lexvold noticed the arbitrator sleeping during testimony that benefitted Marnac, but said nothing about this to the arbitrator or to Marnac's attorney. The more plausible scenarios would have been that 1) if the arbitrator was

asleep, Lexvold would have objected or at least relayed this information to Marnac's attorney, or 2) that the arbitrator did not fall asleep, so Lexvold had nothing to relay. Under the first scenario, Marnac's attorney cannot contend that the waiver was not knowingly made, and under the second scenario, Marnac has no basis to contend that the arbitrator acted improperly. [*13] In either regard, there is no credible evidence to undermine the court's conclusion that Marnac waived the right to presently assert that the arbitrator was asleep.

## C. Public Policy Argument

Marnac cites *Exxon Corp. v. Baton Rouge Oil, 77 F.3d 850 (5th Cir. 1996),* for the proposition that the court should vacate Essen Inc.'s arbitration award because it violates public policy. Brief in Support of Motion to Vacate at 13. Marnac is attempting to invoke the patent misuse doctrine to illustrate that the award violates public policy created by federal patent law. n5

> n5 [HN6] The proposition that an arbitration award can be vacated if it violates public policy appears to arise exclusively in cases where parties seek to vacate arbitration awards that relate to labor disputes and the corresponding interpretation of collective-bargaining agreements. *See W.R. Grace and Co. v. Local Union 759, 461 U.S. 757, 766, 76 L. Ed. 2d 298, 103 S. Ct. 2177 (1983); United Paperworkers Int'l v. Misco, Inc., 484 U.S. 29, 43, 98 L. Ed. 2d 286, 108 S. Ct. 364 (1987); Manville Forest Products Corp. v. United Paperworkers Int'l Union, 831 F.2d 72, 73-74 (5th Cir. 1987); Gulf Coast Indus. Workers v. Exxon Co., 991 F.2d 244, 248-50 (5th Cir. 1993); Exxon Corp. v. Baton Rouge Oil, 77 F.3d 850, 853 (5th Cir. 1996); United Food and Commercial Workers Union AFL-CIO v. Pilgrim's Pride Corp., 193 F.3d 328, 332-33 (5th Cir. 1999); Weber Aircraft Inc., v. General Warehousemen and Helpers Union Local 767, 253 F.3d 821, 825-26 (5th Cir. 2001).* Accordingly, it is not clear whether the public policy exception is intended to apply to arbitration awards that do not arise out of labor disputes.

> In *United Paperworkers Int'l v. Misco, Inc.,* the Supreme Court held that "two points follow from our decision in [*W.R. Grace and Co. v. Local Union 759*]. First, [HN7] a court may refuse to enforce a collective-bargaining agreement when the specific terms contained in the agreement violate public policy. Second, it is apparent that our decision in that case *does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy.*" *484*

*U.S. at 43* (emphasis added). The italicized language arguably means that the Supreme Court intended to limit the public policy exception to the interpretation of collective-bargaining agreements within labor disputes. Thus, the exception may not apply to Essen Inc.'s award, because it does not arise from a labor dispute.

The court does not resolve this issue because Marnac's invocation of the exception is without merit. Accordingly, even if it applied, it would not invalidate Essen Inc.'s award. The court therefore disposes of Marnac's argument on the merits, but by doing so, it does not necessarily imply that the public policy exception applies in a non-labor context.

[*14]

Relevant to this case, [HN8] the patent misuse doctrine mandates that "any attempted reservation or continuation *in the patentee* or those claiming under him of the patent monopoly, after the patent expires, whatever the legal device employed, runs counter to the policy and purpose of the patent laws." *Brulotte v. THYS Co.,* 379 U.S. 29, 31, 13 L. Ed. 2d 99, 85 S. Ct. 176 (1964)(citing *Scott Paper Co. v. Marcalus Mfg.,* 326 U.S. 249, 256, 90 L. Ed. 47, 66 S. Ct. 101 (1945)) (internal quotations omitted) (emphasis added). Accordingly, "a *patentee's* use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se." *379 U.S. at 32* (emphasis added). This doctrine becomes relevant in scenarios where a patentee licenses others to use his patent, for a royalty fee, and attempts to continue collecting the fee after his patent has expired. *See Id. at 29-33; Meehan v. PPG Indus., 802 F.2d 881, 882-83 (7th Cir. 1986).* The following language in the arbitration award gives rise to Marnac's contention that the award violates the patent misuse doctrine:

[Essen Inc.] is entitled [*15] to receive net five percent (5%) of all revenue, royalties, compensation, fees, judgments, or settlements (excluding punitive damages) for infringement and income resulting from development, licensing, sale, ownership, or transfer of prescription pharmaceutical compounds/products owned by Marnac [] or assigned to Marnac[] from other related persons or entities. Ownership by Marnac [] of such prescription pharmaceutical compounds/products shall mean all pharmaceutical compounds/products whose use has been *patented by Marnac* [] or other related per-

sons or entities from whom Marnac [] may receive assignments.

Arbitration Award at 1 (emphasis added). The doctrine does not apply here because this language has nothing to do with an attempt by Essen Inc. to collect a royalty fee on a patent that it owns, after the patent expires. Essen Inc. owns no patent relevant to this dispute. It is merely attempting to collect a percentage of the payments, including royalty payments, that Marnac receives on patents *that Marnac owns.* Marnac's public policy argument is therefore without merit, and it has failed to assert any valid challenge to Essen Inc.'s Motion to Confirm. The [*16] Motion to Confirm is therefore granted insofar as the merits are concerned. n6

    n6 For reasons later discussed, the motion is denied in part and granted in part with respect to Essen Inc.'s request for attorney's fees.

*D. Miscellaneous Matters*

*1. Motion to Vacate*

As the court has determined that Essen Inc.'s Motion to Confirm should be granted, it must deny Marnac's Motion to Vacate, because it is based on facts that overlap the Motion to Confirm. If the court were to grant Marnac's Motion to Vacate, it would be inconsistent with the court's prior ruling. Accordingly, Marnac's Motion to Vacate is hereby denied.

*2. Essen Inc.'s Motion to Strike Affidavit Testimony*

Marnac submitted the affidavits of Lexvold and Charles R. McConachie ("McConachie") with its Motion to Vacate. Lexvold's affidavit sets forth his contention that the arbitrator was asleep. Essen Inc. moves to strike this affidavit because it is allegedly based on improper conclusions and speculation. This issue does not affect the court's [*17] ruling because in considering this affidavit, it nevertheless reaches the decision that the arbitration award should be confirmed. Moreover, Marnac has waived the right to assert that the arbitrator was asleep. Portions of McConachie's affidavit refer to Essen's videotaped testimony as being a deposition. Essen Inc. objects to these references. Again, this has no bearing on the court's decision to confirm the award. Accordingly, the Motion to Strike Affidavit Testimony is denied.

*3. Essen Inc.'s Request for Attorney's Fees and Costs*

Essen Inc. argues that it is entitled to attorney's fees and costs in part because the underlying contract between it and Marnac provides for such. Brief in Support of Plaintiff's Reply to Defendant's Response to Motion to

Confirm at 17. n7 The contract contains an arbitration clause which provides that the "prevailing party shall be entitled to reimbursement for all costs, including reasonable [attorney's] fees." Motion to Confirm, Exhibit "B" at 4. Essen Inc. contends that this provision entitles it to attorney's fees and costs that: 1) were excluded from the arbitration award, although they accrued during the arbitration, because they had not [*18] yet been incurred or were not yet billed when Essen Inc. proved up its expenses to the arbitrator; 2) accrued when it responded to Marnac's post-arbitration briefing; and 3) accrued in relation to the Motion to Confirm and Motion to Vacate. Brief in Support of Plaintiff's Reply to Defendant's Response to Motion to Confirm at 18.

n7 Essen Inc. alternatively argues that it is entitled to attorney's fees under *Tex. Civ. Prac. & Rem. Code § 38.001 et seq.* (Vernon 1997), and because Marnac's opposition to the award was allegedly without justification. Brief in Support of Plaintiff's Reply to Defendant's Response to Motion to Confirm at 17. Texas courts do not recognize section 38.001 *et seq.* as a basis for attorney's fees under the present facts, *see Kline v. O'Quinn, 874 S.W.2d 776, 785* (Tex. App. - Houston [14th Dist.] 1994, no writ.), and although the court has denied Marnac's Motion to Vacate, it does not conclude that there was absolutely no justification for the motion. The parties' contract therefore serves as the basis for attorney's fees.

[*19] [HN9]

Under the American rule of attorney's fees, parties are generally not entitled to attorney's fees unless they contracted for the fees or a statute expressly provides for the fees. *See Galveston County Navigation Dist. No. 1 v. Hopson Towing Co., 92 F.3d 353, 356 (5th Cir. 1996).* This principle applies to a party's attempt to confirm an arbitration award. *See generally Bell Prod. Eng'rs Assoc. v. Bell Helicopter Textron, 688 F.2d 997, 999 (5th Cir. 1982).*

Essen Inc. and Marnac's contract provides for attorney's fees and costs related to confirmation of the arbitration award. This is so because [HN10] the parties agreed to arbitrate under the AAA rules, and the rules contemplate binding arbitration that permits a federal court to enter judgment on an arbitration award. *See Mckee v. Home Buyers Warranty Corp., 45 F.3d 981, 983 (5th Cir. 1995); 9 U.S.C. § 9.* Accordingly, arbitration under the AAA rules contemplates confirmation of the arbitration award by a federal court. Since the arbitration clause in the parties' contract incorporates these rules, the court

construes the contract to entitle Essen Inc. to reasonable attorney's [*20] fees and costs that accrued during the confirmation process.

Accordingly, the court confirms the $ 126,230 in attorney's fees and the $ 23,409.44 in costs that the arbitrator awarded to Essen Inc. Additionally, the court determines that Essen Inc. is entitled to reasonable attorney's fees and costs incurred in filing the Motion to Confirm and in responding to the Motion to Vacate. Although the court determines that Essen Inc. is entitled to reasonable attorney's fees and costs in filing the Motion to Confirm and in responding to the Motion to Vacate, Essen Inc. did not submit sufficient evidence to enable the court to determine the amount of reasonable attorney's fees and costs that it incurred. Accordingly, [HN11] in accordance with *Fed. R. Civ. P. 54(d)(2)*, Essen Inc. must submit appropriate documentation that sets forth the number of hours reasonably expended in relation to the Motion to Confirm and Motion to Vacate, evidence establishing a reasonable hourly rate for its attorneys, and a bill of costs. Once the court has reviewed these materials, it will issue a separate judgment as permitted under *Fed. R. Civ. P. 54(d).*

Essen Inc. requests $ 27,662.50 in attorney's fees and approximately [*21] $ 4,000 in costs that it incurred during the arbitration, but which were not included in the arbitrator's award. The court denies Essen Inc.'s request for these fees and expenses. These fees and expenses were not awarded by the arbitrator, and the court has no authority, contractual or statutory, to *confirm* what was not awarded. In other words, the court cannot confirm what was not included in the arbitrator's award. There is simply nothing to confirm with respect to these fees and expenses. Additionally, the fees and expenses arose in direct relation to the arbitration and before this court assumed control over the case. Accordingly, Essen Inc. should have presented them to the arbitrator. Essen Inc. therefore has waived its right, if any, to the fees and expenses.

Essen Inc. finally requests that the court grant judgment in a sum certain for attorney's fees based on future legal services. Specifically, Essen Inc. seeks reasonable attorney's fees for services not yet rendered in the amount of $ 25,000 through the Fifth Circuit Court of Appeals, and $ 20,000 in the event of an Application for Writ of Certiorari to the Supreme Court of the United States. *See* Motion to Confirm [*22] at 4-5; Plaintiff's Appendix, Tab H at 5. The court, however, has no way of assessing whether these prospective attorney's fees are reasonable, as the events upon which the fees will be based have not occurred. Moreover, if this case is appealed, the court has jurisdiction to address the issue of attorney's fees if Plaintiff is a prevailing party on appeal.

Accordingly, the court denies fees for services that have not yet been rendered.

### III. Conclusion

For the reasons stated herein, Plaintiff Von Essen, Inc.'s First Amended Motion to Confirm Arbitration Award and Enter Judgment is hereby **granted in part and denied in part** as stated herein. Defendant Marnac, Inc.'s Motion to Vacate Arbitration Award is hereby **denied**, and Von Essen, Inc.'s Motion to Strike Affidavit Testimony is hereby **denied**. The arbitration award, entered on or about August 23, 2000, and attached as Exhibit "A" to Von Essen, Inc.'s Amended Motion to Confirm Arbitration Award and Enter Judgment, filed October 18, 2000, is hereby **confirmed**. Judgment will issue by separate document, as required by *Fed. R. Civ. P. 58.*

**It is so ordered** this 2nd day of January, 2002.

Sam [*23] A. Lindsay

United States District Judge

### JUDGMENT

This judgment is issued pursuant to the court's order of January 2, 2002. It is hereby ORDERED, ADJUDGED, and DECREED that:

> A. The arbitration award, entered on or about August 23, 2000, and attached as Exhibit "A" to Von Essen, Inc.'s Amended Motion to Confirm Arbitration Award and Enter Judgment, filed October 18, 2000, is hereby confirmed and incorporated into this judgment as if repeated herein verbatim;

B. Von Essen, Inc. shall recover prejudgment interest at the applicable legal rate provided by law;

C. Postjudgment interest at the rate of 2.28% per annum shall apply to the total amount of this judgment, from the date of this judgment until paid;

D. Von Essen, Inc. shall recover from Marnac, Inc., $ 126,230 in attorney's fees and $ 23,409.44 in costs that were awarded by the arbitrator;

E. The administrative fees and expenses of the American Arbitration Association and the compensation and expenses of the arbitrator totaling $ 24,342.98 shall be borne by Marnac, Inc. Therefore, Marnac, Inc. shall pay to Von Essen, Inc. the sum of $ 12,232.02, representing Von Essen, Inc.'s share of deposits [*24] previously advanced to the American Arbitration Association.

F. Von Essen, Inc. is entitled to enforce its rights as provided by the parties' contract and the arbitrator's award entered on or about August 23, 2000; and

G. All relief not expressly granted herein is denied.

Signed this 2nd day of January, 2002.

Sam A. Lindsay

United States District Judge

# EXHIBIT C

LEXSEE 2003 U.S. DIST. LEXIS 21139

### THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, et al., Plaintiffs, -against- EASTERN MILLENIUM CONSTRUCTION, INC., Defendant.

#### 03 CIV. 5122 (DAB)

#### UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2003 U.S. Dist. LEXIS 21139; 174 L.R.R.M. 2534*

**November 20, 2003, Decided**
**November 21, 2003, Filed**

**DISPOSITION:** [*1] Arbitration award confirmed. Requests for attorney fees and prejudgment interest granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs pension funds sought to confirm an arbitration award issued pursuant to § 301 *(29 U.S.C.S. § 185)* of the Labor Management Relations Act (LMRA), and § 9 *(9 U.S.C.S. § 9)* of the Federal Arbitration Act, as well as an award of prejudgment interest, and attorneys' fees and costs incurred in bringing the confirmation proceeding.

**OVERVIEW:** The district court found nothing improper about the arbitration award granted to the plaintiffs and that defendants had made no showing as to any of the statutory grounds for vacation, correction or modification *9 U.S.C.S. § § 10,* 11. The district court added that the arbitrator clearly acted within the authority given to him by the parties' collective bargaining agreement (CBA) and accordingly, confirmed the arbitration award. The district court also found that the history of the dispute warranted the award of attorney's fees because the defendant agreed to submit all disputes regarding its payment obligations to plaintiffs to binding arbitration under the CBA and had chosen not to participate in the arbitration proceedings or even to oppose plaintiffs' application for confirmation of the arbitration award. Finally, in light of the presumption in favor of prejudgment interest and the fact that the CBA had a binding arbitration clause, the court found that prejudgment interest was appropriate.

**OUTCOME:** Plaintiffs' requests for attorneys' fees and prejudgment interest was granted and plaintiffs' arbitration award was confirmed.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Collective Bargaining & Labor Relations > Judicial Review*
*Civil Procedure > Alternative Dispute Resolution > Federal Arbitration Act*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Limits*
[HN1] Confirmation of a labor arbitration award under § 301 *(29 U.S.C.S. § 185)* of the Labor Management Relations Act, and § 9 *(9 U.S.C.S. § 9)* of the Federal Arbitration Act, is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court. Federal courts are extremely deferential in their review of awards issued by arbitrators acting within authority granted by a collective bargaining agreement.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Judicial Review*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Awards*
*Civil Procedure > Alternative Dispute Resolution > Federal Arbitration Act*
[HN2] None of the statutory grounds for vacation, modification or correction included in the Federal Arbitration Act relate to the underlying merits of an arbitration award. *9 U.S.C.S. § § 10,* 11.

*Civil Procedure > Alternative Dispute Resolution > Federal Arbitration Act*
[HN3] Pursuant to the Federal Arbitration Act, at *9 U.S.C.S. § 12,* a notice of a motion to vacate, correct or

Case 1:04-cv-01510-JJF     Document 11-2     Filed 08/16/2005     Page 18 of 31

Page 2

2003 U.S. Dist. LEXIS 21139, *; 174 L.R.R.M. 2534

modify an arbitration award must be served on the opposing party within three months after the award is filed or delivered.

*Civil Procedure > Alternative Dispute Resolution > Federal Arbitration Act*
*Civil Procedure > Costs & Attorney Fees > Attorney Fees*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Limits*
[HN4] Ordinarily, attorney's fees cannot be recovered in a federal action in the absence of statutory authority, and neither § 301 *(29 U.S.C.S. § 185)* of the Labor Management Relations Act, nor the Federal Arbitration Act provide for attorney's fees in actions to confirm an arbitration award. However, because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of arbitration award refuses to abide by an arbitrator's decision without justification.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Awards*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Limits*
[HN5] While the awarding of prejudgment interest in confirmation of arbitration award actions in the discretion of the trial court, there is a presumption in favor of prejudgment interest. Moreover, courts in the United States Court of Appeals for the Second Circuit have awarded pre-judgment interest in cases involving an Labor Management Relations Act arbitration conducted pursuant to a collective bargaining agreement that indicated an arbitration award is final and binding.

**COUNSEL:** For New York City District Council of Carpenters Pension Fund, New York City District Council of Carpenters Welfare Fund, New York City District Council of Carpenters Vacation Fund, New York City District Council of Carpenters Annuity Fund, New York City District Council of Carpenters Apprenticeship, New York City District Council of Carpenters Charity Fund, The New York City and Vicinity Carpenters Labor-Management Cooperation Fund, Michael J Forde, Joseph Olivieri, PLAINTIFFS: Gary Silverman, O'Dwyer & Bernstien, LLP, New York, NY USA.

**JUDGES:** DEBORAH A. BATTS, United States District Judge.

**OPINIONBY:** DEBORAH A. BATTS

**OPINION:**

MEMORANDUM AND ORDER

DEBORAH A. BATTS, United States District Judge.

Plaintiffs, the New York City District Council of Carpenters Pension, Welfare, Vacation, Annuity, and Charity Funds, the New York City District Council of Carpenters Apprenticeship, [*2] the Journeyman Retraining, Educational and Industry Fund, the United Brotherhood of Carpenters and Joiners of America, and the New York City and Vicinity Joint Labor Management Cooperation Trust Fund, petition the Court pursuant to *Section 301* of the Labor Management Relations Act ("LMRA"), *29 U.S.C. § 185*, and *Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9*, to confirm an arbitration award issued May 12, 2003. n1 Plaintiffs also seek an award of pre-judgment interest on the award at a rate of 10% per year, as well as attorneys' fees and costs incurred in bringing this confirmation proceeding. To date, the Defendant has neither responded to Plaintiffs' confirmation action nor otherwise sought relief from the arbitration award. For the reasons stated below, the arbitration award is CONFIRMED, and Plaintiffs' requests for attorneys' fees and prejudgment interest are GRANTED.

n1 Although Plaintiffs commenced this action by filing a Summons and Complaint, the Court treats Plaintiff's Complaint as an application for confirmation of arbitration award because that is the primary relief requested in the Complaint. Additionally, the Court will not consider Plaintiff's claims for relief under *Sections 502 and 515* of the Employee Retirement Income Security Act, *29 U.S.C. § § 1132 and 1145*, because "an action to confirm an arbitration award is not an appropriate vehicle for adjudicating" such claims. *Ottley v. Schwartzberg, 819 F.2d 373, 377 (2d Cir. 1987)*.

[*3]

I. BACKGROUND

The following facts are not disputed by the parties:

On July 1, 1999, Defendant entered into a Collective Bargaining Agreement (the "Agreement") with the District Council of New York City and Vicinity Of the United Brotherhood of Carpenters and Joiners of American (the "Union"). Complaint, filed July 10, 2003 ("Compl."), P 8. Under the terms of the Agreement, Defendant was required to make periodic monetary contributions to the Plaintiffs, who are jointly administered, multi-employer benefit funds administered by various trustees for the benefit of the Union's members. Id.

Case 1:04-cv-01510-JJF     Document 11-2     Filed 08/16/2005     Page 19 of 31

Page 3

2003 U.S. Dist. LEXIS 21139, *; 174 L.R.R.M. 2534

A dispute arose during the period of the Agreement when the Defendant failed to make several required benefit fund payments. Id. P 9. Pursuant to the arbitration clause in the Agreement, the dispute was submitted to binding arbitration in front of Roger R. Maher, the duly designated impartial arbitrator. Id. P 10. On March 28, 2003, an arbitration hearing was held at which Defendants failed to appear. See Modified Opinion and Default Award of Arbitrator, dated May 12, 2003, ("Arb. Op.") at 2. On May 12, 2003, Mr. Maher issued an opinion finding Defendant had failed to make payments due [*4] under the Agreement for the period January 1 through December 31, 2001, and awarding the Plaintiffs a total of $ 24,573.92. Id. at 3-4.

Thereafter, Defendant did not comply with the terms of the award. Compl. P 14. On July 10, 2003, the Plaintiffs filed a civil action with this Court seeking: (1) confirmation of the arbitration award, (2) 10% prejudgment interest per year from the date of the award to the entry of confirmation, and (3) attorney's fees and costs incurred in bringing this action. Id. at 4. Plaintiffs' Complaint was served upon the Defendant on July 18, 2003. To this point, Defendant has neither responded to the Complaint nor separately brought a motion to vacate, modify or correct the arbitration award. While prosecuting this confirmation action, Plaintiffs' counsel have billed a total of $ 953.50 in attorney time and incurred $ 89.75 in additional costs. See Affidavit of Attorney Services, dated September 30, 2003 ("Garcia Aff.") at 3.

II. DISCUSSION

A. Confirmation of the Arbitration Award

[HN1] Confirmation of a labor arbitration award under *Section 301 of the LMRA, 29 U.S.C. § 185*, and *Section 9 of the FAA, 9 U.S.C. § 9*, [*5] is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)*. Federal courts are extremely deferential in their review of awards issued by arbitrators acting within authority granted by a collective bargaining agreement. See *United Steel Workers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 596, 4 L. Ed. 2d 1424, 80 S. Ct. 1358 (1960)* ("The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements."); *Int'l Chemical Workers Union Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 45 (2d Cir. 1985)* ("In cases in which the arbitrator acts within authority granted by contract, the courts must defer to the arbitrator's decision.") (citations omitted); *In re Marine Pollution Service, Inc., T/A, 857 F.2d 91, 94 (2d Cir. 1988)* ("An arbitrator's decision is entitled to substantial deference, and the arbitrator need only explicate his reasoning under the con-

tract "in terms that offer even a barely colorable justification [*6] for the outcome reached in order to withstand judicial scrutiny.") (internal quotations omitted).

Indeed, [HN2] none of the statutory grounds for vacation, modification or correction included in the FAA relate to the underlying merits of an arbitration award. See *9 U.S.C. § § 10, 11*; *Florasynth, 750 F.2d at 176* ("The grounds for vacation are narrow. Courts may not question provisions of the award itself; rather, they may vacate only for conduct that has prejudiced the rights of the parties."). Moreover, "the showing required to avoid summary confirmation is high." *Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987)*; see also *National Bulk Carriers, Inc. v. Princess Management Co., 597 F.2d 819, 825 (2d Cir. 1979)* ("only clear evidence of impropriety justifies a denial of summary confirmation.") (internal quotations omitted).

Applying this deferential standard of review, the Court finds nothing improper about the arbitration award granted to the Plaintiffs. Defendants have made no showing as to any of the statutory grounds for vacation, correction or modification. n2 Furthermore, the arbitrator, Mr. Maher, clearly [*7] acted within the authority given to him by the Collective Bargaining Agreement. The Agreement required the parties to submit all disputes regarding Defendants' benefit fund payment obligations to Plaintiffs to binding arbitration in front of Mr. Maher, Compl. P 10, and Mr. Maher expressly referred to Defendant's payment obligations as stated in the Agreement when rendering his award decision. See Arb. Op. at 2. Accordingly, the Court finds no reason why the arbitration award should not be confirmed.

---

n2 Because Defendant neither responded to Plaintiffs' application for confirmation nor filed its own motion for vacation, correction or modification within three months of the issuance of the award, it has waived its right to contest confirmation. See [HN3] *9 U.S.C. § 12* ((requiring that a notice of motion to vacate, correct or modify an arbitration award be served on the opposing party within three months after the award is filed or delivered); *Florasynth,, 750 F.2d at 174* (holding that defendant's failure to move to vacate within the FAA's three- month time limit also precluded him from later opposing a motion to confirm the arbitration award).

[*8]

B. Attorney's Fees

2003 U.S. Dist. LEXIS 21139, *; 174 L.R.R.M. 2534

Plaintiffs also seek a total of $ 953.50 in attorney's fees and $ 89.75 in costs they have incurred while pursuing this confirmation action Garcia Aff. at 3. [HN4] Ordinarily, attorney's fees cannot be recovered in a federal action in the absence of statutory authority, and neither *Section 301 of the LMRA* nor the FAA provide for attorney's fees in actions to confirm an arbitration award. *Int'l Chemical Workers Union Local No. 227, 774 F.2d at 47.* However, because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of arbitration award "refuses to abide by an arbitrator's decision without justification." Id. (citations omitted).

While the propriety of an attorney fee award depends upon the facts and circumstances of each case, the history of the present dispute suggests that attorney's fees are warranted here. When the Defendant entered into the Collective Bargaining Agreement, it agreed to submit all disputes regarding its payment obligations to Plaintiffs to binding arbitration. Moreover, Defendant [*9] chose not to participate in the arbitration proceedings or even to oppose Plaintiffs' application for confirmation of the arbitration award. Defendant's refusal to comply with the arbitration award is therefore clearly without justification. See *In the Matter of Arbitration between Soft Drink and Brewery Workers Union Local 812, IBT, AFL-CIO and Ali-Dana Beverages, Inc., 1996 U.S. Dist. LEXIS 10585, No. 95 CIV. 8081, 1996 WL 420209, at *3 (S.D.N.Y. July 25, 1996)* (awarding attorney's fees where defendant "failed to either pay the award or file a motion to vacate or modify"); *Hunt v. Commodity Haulage Corp., 647 F. Supp. 797, 799 (E.D.N.Y. 1986)* (finding defendants' resistance to arbitration award was "without justification" where defendants had agreed to binding arbitration under a collective bargaining agreement, then chose not to participate in the arbitration proceedings and did not oppose application for confirmation).

Accordingly, an award of $ 1043.25 in attorney's fees and costs to Plaintiffs as specified in Plaintiffs' Affidavit of Attorney Services is appropriate.

C. Prejudgment Interest

Plaintiffs also seek an award of 10% prejudgment interest per year on the [*10] arbitration award running from the date of the award to the entry of judgment by this Court. [HN5] While the awarding of prejudgment interest in confirmation of arbitration award actions in the discretion of the trial court, there is a "presumption in favor of prejudgment interest." *Waterside Ocean Navigation Co. v. International Navigation, Ltd., 737 F.2d*

*150, 154 (2d Cir. 1984).* Moreover, courts in this Circuit have awarded pre-judgment interest in cases involving an LMRA arbitration conducted pursuant to a collective bargaining agreement that indicated an arbitration award is "final and binding." See *Soft Drink and Brewery Workers Union, 1996 U.S. Dist. LEXIS 10585, 1996 WL 420209, at *3* (awarding prejudgment interest in action to confirm an LMRA arbitration award); *Maney v. United Sanitation, Inc., 2000 U.S. Dist. LEXIS 12004, No. 99 CIV. 8595, 2000 WL 1191235, at *6 (S.D.N.Y. Aug. 21, 2000)* (same).

In light of the presumption in favor of prejudgment interest and the fact that the Collective Bargaining Agreement between the parties has a binding arbitration clause, the Court finds that prejudgment interest in this case is appropriate. However, the Court will follow the common practice among [*11] the courts of this Circuit and set the interest rate at 9% rather than 10% per year. See *Soft Drink and Brewery Workers, 1996 U.S. Dist. LEXIS 10585, 1996 WL 420209, at *3* (awarding prejudgment interest at rate of 9% per annum); *Maney, 2000 U.S. Dist. LEXIS 12004, 2000 WL 1191235, at * 6* (same).

III. CONCLUSION

For the reasons stated above, Plaintiffs' May 12, 2003 arbitration award is hereby CONFIRMED. In addition, Plaintiffs are AWARDED attorney's fees and costs in the amount of $ 1043.25 and prejudgment interest on the arbitration award at an annual rate of 9% from the time of the award to the date of this judgment. The Clerk of the Court is DIRECTED to enter judgment accordingly and close the docket in the above-captioned case. n3

n3 Because the Court's Order grants all relief requested by Plaintiffs in their Complaint, there is no need for the Court to address Plaintiffs' Default Judgment Motion.

SO ORDERED.

Dated: November 20, 2003

　　Deborah A. Batts [*12]

　　United States District Judge

# EXHIBIT D

LEXSEE 1991 U.S. DIST. LEXIS 8976

## JAMAICA COMMODITY TRADING COMPANY LIMITED, Petitioner, v. CONNELL RICE & SUGAR COMPANY, INC. and L & L MARINE SERVICE, INC. Respondents

### No. 87 Civ. 6369 (JMC)

### UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### *1991 U.S. Dist. LEXIS 8976*

### July 2, 1991
### July 3, 1991, Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner commodity trader (trader) filed a motion to confirm an arbitration award against respondents, commodity producer (producer) and transport service (transporter) under *9 U.S.C.S. § 9.* The cause of action arose when a delay in loading commodities caused the transporter to seek recovery of costs from the trader, which then sought indemnification from the producer.

**OVERVIEW:** The trader entered into a contract with the producer to purchase rice. The agreement had an arbitration clause governed by the American Arbitration Association (AAA). The trader then contracted with the transporter to provide for shipping. That agreement also had an arbitration clause, governed by the Society of Maritime Arbitrators (SMA). As a result of a delay, the transporter sought to recover costs from the trader, which then sought indemnification from the producer. The SMA panel awarded costs to the transporter, and the AAA panel awarded indemnification to the trader. The trader brought an enforcement action when the producer refused to pay. The court granted the motion to confirm the award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *9 U.S.C.S. § § 201-*08. The court held that the public policy exception of *9 U.S.C.S. § 201* was to be narrowly construed and that because the award did not violate the most basic notions of morality and justice. The court also awarded attorney's fees to the trader. The court held that the producer acted in bad faith by asserting to the court the same arguments that the arbitrators had expressly rejected.

**OUTCOME:** The court granted the trader's motion to confirm the arbitration award. The court awarded attorney's fees to the trader based on the producer's bad faith refusal to comply with the arbitration award.

**LexisNexis(R) Headnotes**

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
[HN1] The court has jurisdiction to confirm arbitration award under the Arbitration Act, *9 U.S.C.S. § 9.* The court also has jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *9 U.S.C.S. § § 201-*08, which applies to the recognition and enforcement of foreign arbitral awards arising out of commercial relationships.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
[HN2] A commercial arbitration award subject to the *9 U.S.C.S. § § 201-*08 is one made within the legal framework of another country, pronounced in accordance with foreign law or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
[HN3] The Arbitration Act requires a party to move to vacate an arbitration award within three months after the award is filed or delivered. *9 U.S.C.S. § 12.* The Arbitration Act also allows a party one year to confirm an award. *9 U.S.C.S. § 9.* The one-year period to confirm the award does not provide an exception to the three-

Case 1:04-cv-01510-JJF     Document 11-2     Filed 08/16/2005     Page 23 of 31

Page 2
1991 U.S. Dist. LEXIS 8976, *

month limitation period to vacate the award. Thus, a party may not raise a motion to vacate, modify or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
[HN4] The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *9 U.S.C.S. § § 201-08* (the Convention), does not expressly limit the time in which a party may move to vacate or remand an arbitration award. However, in implementing the Convention, Congress provided that the Arbitration Act applies to the Convention to the extent that that the Arbitration Act is not in conflict with this chapter the Convention or the Convention as ratified by the United States. *9 U.S.C.S. § 208.*

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
[HN5] Within three years after an arbitral award falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention) is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention. *9 U.S.C.S. § 207.*

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
[HN6] Under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention), a party has three years to move to confirm the award, in contrast to the Arbitration Act, which allows a party one year to confirm the award. Under the Convention a party may raise one of the grounds for vacating an award at any time during the three-year period in opposition to a motion to confirm.

*Governments > Legislation > Statutory Remedies & Rights*
[HN7] Where two statutes overlap, a party has more than one remedy available and may choose the most advantageous.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
[HN8] The court's review of the arbitration award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention) is limited. The burden of proving that an award should be overturned is on the party challenging the enforcement and recognition

of the award. A party may attack a foreign award only on the grounds enumerated in Article V of the Convention. Recognition and enforcement of an arbitral award may be refused if the competent authority in the country where the recognition and enforcement is sought finds that the recognition or enforcement of the award would be contrary to the public policy. *9 U.S.C.S. § 201,* Art. V(2)(b). The public policy defense must be construed to achieve the Convention's goal of encouraging recognition and enforcement of commercial arbitration agreements in international contracts. Thus, the public policy defense should be construed narrowly. It should apply only where enforcement would violate the most basic notions of morality and justice.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
[HN9] The arbitrator's award must draw its essence from the parties' agreement. The arbitrator fails to satisfy this standard if he must have based his award on some body of thought, or feeling, or policy or law that is outside the contract. However, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he has committed serious error does not suffice to overturn his decision.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
[HN10] Arbitrators are not required to state the reasons for their award. Absent a reasoned award, if a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed. Nevertheless, if the arbitrators provide a basis for their decision, the court is not prohibited from examining the arbitrators' rationale.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
[HN11] Whether an arbitration panel failed to evaluate a party's liability under a contract must be determined by examining the award itself.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
[HN12] It is not fatal to the arbitration award that in reaching their conclusion the arbitrators failed to specifically refer to the contract.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*

[HN13] A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*

[HN14] When there is no basis for finding that an arbitration panel exceeded its authority, there is no ground for finding that enforcement of the award threatens public policy under *9 U.S.C.S. § 201.*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN15] A court has discretion to award attorneys' fees where the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. In the arbitration context, attorneys' fees are warranted where a party's refusal to comply with the arbitrator's decision was in bad faith or frivolous.

**JUDGES: [*1]**

John M. Cannella, United States District Judge.

**OPINIONBY:**

CANNELLA

**OPINION:**

MEMORANDUM AND ORDER

Petitioner's motion to confirm the arbitration award dated June 26, 1990 is granted. *9 U.S.C. § 9* (1988). Respondent's motion to vacate or remand the arbitration award is denied. *9 U.S.C. § 201* (1988).

BACKGROUND

On or about July 7, 1986, petitioner Jamaica Commodity Trading Company Limited ["JCTC"] entered into a contract with respondent Connell Rice & Sugar Company, Inc. ["Connell Rice"], whereby Connell Rice agreed to sell to JCTC approximately 4,500 tons of rice. JCTC is a corporation owned by the Government of Jamaica with its principal place of business in Jamaica. Connell Rice is a New Jersey corporation with its principal place of business in New Jersey. The commodity contract contains an arbitration clause which provides for arbitration of any controversy or claim arising out of the contract in accordance with the Rules of the American Arbitration Association [the "AAA"].

On or about July 7, 1986, JCTC also entered into a charter party with L & L Marine Service, Inc. ["L & L Marine"], whereby it chartered the Ocean Chief tug and barges to carry the rice from a port in the United States Gulf [*2] to Jamaica. The charter party contains an arbitration clause providing for the arbitration of disputes arising under the contract in accordance with the Rules of the Society of Maritime Arbitrators [the "SMA"]. As a result of a delay in loading the rice, L & L Marine sought to recover its demurrage costs from JCTC. JCTC in turn sought indemnification from Connell Rice for any amount it owed to L & L Marine.

The Court ordered that a joint hearing be held before both the SMA and AAA panels to resolve the disputes. See Memorandum and Order, at 6-7, 87 Civ. 6369 (JMC) (S.D.N.Y. Jan. 12, 1988). The Court further ordered that upon conclusion of the joint hearing, the SMA panel make its determination regarding the L & L Marine/JCTC dispute and that after further proceedings before the AAA panel, the AAA panel make its determination as to the JCTC/Connell Rice dispute. See id. After four joint hearings, the SMA panel rendered an award in the sum of $ 92,792.35 against JCTC, for L & L Marine's demurrage and other related expenses incurred from the delay in loading the cargo. A fifth hearing was then held before the AAA panel. Shortly thereafter, the AAA panel issued a final award on [*3] June 26, 1990 in favor of JCTC. The award consisted of one page detailing the panel's calculation of its final award in the sum of $ 91,772.52, plus prejudgment interest in the amount of 10% per year from the date of the award until the award is fully paid or reduced to judgment. Although the AAA rules do not require the arbitrators to delineate the reasons for their decision, the chairman of the panel agreed to provide the parties with a reasoned version of the award as a courtesy to counsel. A majority of the AAA panel issued a document stating the reasons for the June 26 award on October 24, 1990.

JCTC now moves to confirm the June 26, 1990 AAA award pursuant to section 9 of the Federal Arbitration Act, *9 U.S.C. § 9* (1988) [the "Arbitration Act"]. Connell Rice moves to vacate or remand the June 26 award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, acceded to Sept. 30, 1979, *21 U.S.T. 2517*, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (codified at *9 U.S.C. § § 201*-08 (1988)) ["the "Convention"].

DISCUSSION

[HN1] The Court has jurisdiction to confirm the arbitration award under the Arbitration Act. See *9 U.S.C. § 9* (1988). The Court also has [*4] jurisdiction under the Convention, which applies to the recognition and enforcement of foreign arbitral awards arising out of commercial relationships. See id. § 201, Art. I(1), § 202 (1988). The Convention, however, does not define foreign awards. In this circuit, [HN2] a commercial arbitra-

tion award subject to the Convention is one "made within the legal framework of another country, e.g. pronounced in accordance with foreign law or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction." *Bergesen v. Joseph Muller Corp., 710 F.2d 928, 932 (2d Cir. 1983)* (emphasis added). Here, the award involves a Jamaican corporation and Connell Rice seeks to enforce the award in the United States; hence, this Court has jurisdiction to recognize and enforce the award under the Convention. See *Dworkin-Cosell Interair Courier Servs. v. Avraham, 728 F. Supp. 156, 159 (S.D.N.Y. 1989).*

JCTC's application to confirm the award is made under the Arbitration Act. In contrast, Connell Rice's motion to vacate the award is made under the Convention. With respect to the motion to vacate, JCTC first argues that the timeliness [*5] of Connell Rice's motion is governed by the Arbitration Act. It is undisputed that under the Arbitration Act, Connell Rice's objections are untimely. [HN3] The Arbitration Act requires a party to move to vacate an arbitration award within three months after the award is filed or delivered. See *9 U.S.C. § 12* (1988). The Arbitration Act also allows a party one year to confirm an award. See id. § 9. The Second Circuit has held that the one-year period to confirm the award does not provide an exception to the three-month limitation period to vacate the award. See *Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir. 1984).* Thus, "a party may not raise a motion to vacate, modify or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm." Id. Since Connell Rice's objections to JCTC's application to confirm the award were filed approximately five months after the arbitrators issued their award, it is untimely under the Arbitration Act.

Conversely, [HN4] the Convention does not expressly limit the time in which a party may move to vacate or remand an arbitration award. However, in implementing the Convention, [*6] Congress provided that the Arbitration Act applies to the Convention "to the extent that that chapter [the Federal Arbitration Act] is not in conflict with this chapter [the Convention] or the Convention as ratified by the United States." *9 U.S.C. § 208* (1988). JCTC argues that since the Convention is silent, the three-month limitation period should apply to awards also encompassed within the Convention, thereby precluding Connell Rice's motion to vacate the award.

JCTC's argument, however, ignores the plain language of section 207 of the implementing statute, which establishes that there are significant differences between the Convention and the Arbitration Act. Section 207 provides as follows:

[HN5] Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

Id. § 207 (emphasis added). The first notable difference [*7] between the two statutes is that [HN6] under the Convention a party has three years to move to confirm the award, in contrast to the Arbitration Act which allows a party one year to confirm the award. Second, and most importantly, under the Convention a party may raise one of the grounds for vacating an award at any time during the three-year period in opposition to a motion to confirm. Since Connell Rice's motion to vacate is made within three years of the award in opposition to JCTC's motion to confirm, it is permissible under the Convention. The untimeliness of Connell Rice's opposition under the Arbitration Act does not preclude it from proceeding under the Convention. [HN7] Where the two statutes overlap, a party "has more than one remedy available and may choose the most advantageous." *Bergesen, 710 F.2d at 934.*

[HN8] The Court's review of the arbitration award "is limited under the Convention and the burden of proving that an award should be overturned is on the party challenging the enforcement and recognition of the award." *La Societe Nationale v. Shaheen Natural Resources Co., 585 F. Supp. 57, 61 (S.D.N.Y. 1983)* (citations omitted), aff'd, *733 F.2d 260* [*8] (2d Cir.), cert. denied, *469 U.S. 883 (1984).* A party may attack a foreign award only on the grounds enumerated in *Article V of the Convention. See Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA), 508 F.2d 969, 973 (2d Cir. 1974).* In support of its contention that the award should be vacated, Connell Rice relies on Article V(2)(b), which provides as follows:

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where the recognition and enforcement is sought finds that:

. . . .

b. The recognition or enforcement of the award would be contrary to the public policy.

*9 U.S.C. § 201,* Art. V(2)(b) (1988). The public policy defense must be construed to achieve the Convention's goal of encouraging recognition and enforcement of commercial arbitration agreements in international con-

tracts. See *Waterside Ocean Navigation Co. v. International Navigation Ltd., 737 F.2d 150, 152 (2d Cir. 1984).* Thus, "the public policy defense should be construed narrowly. It should apply only where enforcement would violate our 'most basic notions of [*9] morality and justice.'" Id. at l52 (quoting *Fotochrome, Inc. v. Copal Co., 517 F.2d 512, 516 (2d Cir. 1975)).*

Connell Rice bases its claim that vacatur is warranted under the public policy defense on the arbitrators' alleged failure to apply the commodity contract. It is well settled that [HN9] the arbitrator's award must draw its essence from the parties' agreement. See *United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987); In re Marine Pollution Serv. Inc., 857 F.2d 91, 94 (2d Cir. 1988).* The arbitrator fails to satisfy this standard if he "'must have based his award on some body of thought, or feeling, or policy or law that is outside the contract . . . .'" Id. (quoting *Ethyl Corp. v. United Steelworkers, 768 F.2d 180, 187 (7th Cir. 1985),* cert. denied, *475 U.S. 1010 (1986))* (emphasis in original). However, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he has committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, 484 U.S. at 38.* [*10] In support of its position, Connell Rice relies upon the reasons proffered by the arbitrators four months after the award was issued. The Court notes that [HN10] arbitrators are not required to state the reasons for their award. See *Wilko v. Swan, 346 U.S. 427, 436 (1953).* Absent a reasoned award, "if a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1216 (2d Cir. 1972).* Nevertheless, if the arbitrators provide a basis for their decision, the court is not prohibited from examining the arbitrators' rationale. See *United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960); I/S Stavburg v. National Metal Converters, Inc., 500 F.2d 424, 427 (2d Cir. 1974).*

The crux of Connell Rice's contention is that the AAA panel was determined to find in favor of JCTC because the SMA panel had concluded that JCTC was liable to L & L Marine. In support of its position, Connell Rice first points out that the arbitrator who dissented from the SMA panel's award against JCTC subsequently joined in the SMA panel's [*11] award which found in favor of JCTC. Connell Rice contends that there is no logical basis for the arbitrator's change in position, other than a desire to compel Connell Rice to indemnify JCTC for the sums JCTC paid to L & L Marine pursuant to the SMA panel's award. The Court, however, will not speculate as to the arbitrator's motivations. Rather, [HN11] whether the AAA panel failed to evaluate Connell Rice's

liability under the commodity contract must be determined by examining the AAA award itself.

Connell Rice also relies upon the reasons offered by the arbitrators to support its assertion that the panel exceeded its authority. Specifically, Connell Rice claims that the arbitrators' reasons illustrate the panel's failure to consider whether under the commodity contract (1) L & L Marine could tender its notice of readiness at a berth other than Baton Rouge, Louisiana, and (2) L & L Marine could properly tender a notice of readiness when the Ocean Chief tug was not present.

Preliminarily, the Court observes that the arbitrators' reasons indicate that they were cognizant of their obligation to interpret the commodity contract. The panel stated as follows:

It should be noted that after the [*12] final SMA award was issued it was up to the AAA panel to determine whether or not the suppliers (i.e. Connell Rice and Sugar Co. Inc.) should or should not be responsible for the default which Jamaica Commodity Trading Co., Ltd. claimed, since they were found at fault for the payment of demurrage by the majority of the SMA panel in their arbitration with L & L Marine.

Affidavit of Raymond A. Connell in Support of Motion for Order Vacating or Remanding Award of Arbitrators, at Exh. S, 87 Civ. 6369 (JMC) (S.D.N.Y. Nov. 14, 1990) ["Connell Affidavit"].

The remainder of the arbitrators' reasons firmly establish that Connell Rice's claims are unfounded. With respect to Connell Rice's assertion that the arbitrators failed to ascertain whether the commodity contract permitted loading at a berth other than Baton Rouge, the arbitrators found as follows:

In an attempt to convolute the issue, the suppliers [Connell Rice] nominated a berth [Baton Rouge] that was not within the parameters of the supply contract. The owners refused to bring their barges to this berth. It was admitted by suppliers' witness that they, (suppliers), were only talking about part cargo at this berth, if they [*13] could have arranged it.

Connell Affidavit, at Exh. S. The arbitrators plainly considered Connell Rice's argument and found it without merit under the terms of the commodity contract.

Connell Rice's contention that the panel also failed to consider whether under the commodity contract L & L Marine could properly tender its notice of readiness without the presence of the Ocean Chief tug is equally without merit. Connell Rice points out that the AAA panel expressly adopted the SMA panel's finding that L

1991 U.S. Dist. LEXIS 8976, *

& L Marine was not obligated to keep the Ocean Chief tug alongside the barges while they waited for the cargo. Connell Rice, however, blatantly ignores the panel's further statements indicating that it independently considered Connell Rice's contention and found it completely lacking in merit. The panel stated as follows:

Furthermore, the supplier's [Connell Rice's] own employee, Mr. Ravner, admitted that they did not have the cargo ready for the vessel [the Ocean Chief], when the first notices were given to them, when the vessel tendered on July 23rd. [Connell Rice] used the excuse that, because the vessel [the Ocean Chief] was unable to get up to Baton Rouge on that date the suppliers [*14] [Connell Rice] lost the cargo and the berth.

Id.

The arbitrators' reasons show that the panel considered and promptly rejected Connell Rice's contention that proper tender under the commodity contract required L & L Marine to make the Ocean Chief tug available. [HN12] It is not fatal to the award that in reaching their conclusion the arbitrators failed to specifically refer to the commodity contract. To the extent that there is any uncertainty caused by the panel's failure to cite to specific provisions in the commodity contract, it is well settled that [HN13] "a mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *United States Steelworkers, 363 U.S. at 598.* In any event, there was no reason for the panel to specifically refer to the contract because Connell Rice's obligation to supply the cargo did not depend on the presence of the Ocean Chief tug. If Connell Rice had the cargo available, the barges could have been loaded even though the Ocean Chief tug was unavailable. Moreover, it is particularly telling that Connell Rice argues that [*15] the AAA panel should have adopted the reasoning of the dissenting opinion of the SMA panel member who found that under the charter party L & L Marine was required to tender both the barges and the tug. See Connell Affidavit, at para. 45.

In sum, Connell Rice's contention that the AAA panel reached its decision by rubber stamping the SMA panel's findings is completely unjustified. Even a cursory review of the AAA panel's reasons shows that the panel independently concluded that Connell Rice was at fault under the commodity contract. [HN14] Since there is no basis for finding that the AAA panel exceeded its authority, there is no ground for finding that enforcement of the award threatens public policy under the Convention. Accordingly, respondent's motion to vacate and remand the award is denied. *9 U.S.C. § 201 (1988).*

The Court also finds that JCTC is entitled to attorneys' fees and costs because Connell Rice's challenge to the award was wholly devoid of merit. [HN15] A court has discretion to award attorneys' fees "where the losing party has 'acted in bad faith, vexatiously, wantonly or for oppressive reasons.'" *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975)* [*16] (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129 (1974))*. In the arbitration context, attorneys' fees are warranted where a party's refusal to comply with the arbitrator's decision was in bad faith or frivolous. See *Merit Ins. Co. v. Leatherby Ins. Co., 737 F.2d 580, 582 (7th Cir. 1984).* Here, Connell Rice seeks to avoid confirmation of the AAA panel's award based on the same arguments which the AAA panel explicitly rejected. The arbitrators' reasons plainly show that the panel afforded serious consideration to Connell Rice's contentions but found they were merely excuses raised to avoid its obligations under the commodity contract. There is absolutely no support for Connell Rice's assertion that the panel found Connell Rice at fault based upon the SMA panel's findings without making an independent determination of fault under the commodity contract. In short, Connell Rice's motion to vacate the award under circumstances where it clearly had no reasonable chance of prevailing warrants the imposition of attorneys' fees and costs.

Accordingly, JCTC's motion to confirm the arbitration award is granted. *9 U.S.C.* [*17] *§ 9 (1988).* In addition to the principal amount of $ 91,772.52, the Court will also recognize and enforce the arbitrators' award of prejudgment interest. See *Waterside Ocean Navigation Co., 737 F.2d at 154.*

CONCLUSION

Petitioner's motion to confirm the arbitration award is granted. *9 U.S.C. § 9 (1988).* Respondent's motion to vacate and remand the arbitration award is denied. *9 U.S.C. § 201 (1988).*

The Clerk of the Court is directed to enter judgment in favor of petitioner in the sum of $ 91,772.52, plus prejudgment interest at the rate of 10% per year from June 26, 1990 until the date the award is reduced to judgment, and postjudgment interest as provided by *28 U.S.C. § 1961.*

The parties shall submit a joint proposed order setting forth petitioner's reasonable attorneys' fees in opposing respondent's motion to vacate the arbitration award within twenty (20) days of the filing of this Memorandum and Order. In the event the parties fail to agree, petitioner shall submit a detailed affidavit setting forth its reasonable attorneys' fees within twenty-five (25) days of the filing of this Memorandum and Order, and respondent shall submit its objections within ten [*18] (10)

1991 U.S. Dist. LEXIS 8976, *

days after receipt of the affidavit. JCTC is not entitled to attorneys' fees and costs in connection with its motion to confirm the arbitration award.

SO ORDERED.

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHINA THREE GORGES PROJECT    :
CORPO        RATION,                       :
                                                       :
          Petitioner,                            :
                                                       : Civil Action No. 04-1510 JJF
          v.                                        :
                                                       :
                                                       :
ROTEC INDUSTRIES, INC.,                :
                                                       :
          Respondent.                          :

## JUDGMENT ORDER

For the reasons stated in the Court's Memorandum Opinion dated August 2, 2005, it is

HEREBY ORDERED that:

      1)      Respondent Rotec Industries, Inc. shall immediately remit to Petitioner

China Three Gorges Project Corporation

      a)      **U.S. $2,656,865.78,** reflecting the total amount of the Award (U.S.

$4,045,321.89) minus the amount of the Award which Petitioner has already

enforced in China (U.S. $1,388,456.11). The judgment amount included in the

Court's Judgment Order dated August 2, 2005 is hereby amended accordingly;

      b)      **U.S. $206,175.05** for attorneys' fees Petitioner has incurred in

confirming the Arbitration Award;

      c)      **U.S. $_____** for post-arbitration interest, reflecting the

interest accrued as of August 16, 2005 when Petitioner filed its Motion for

Attorneys' Fees, Post-Arbitration Interest and Amendment of Judgment Amount

(U.S. $251,993.39) plus the interest accrued from August 17, 2005 to date (U.S.

$_____) at the rate of U.S. $557.94 per day.


DATE:          _____

                         UNITED STATES DISTRICT JUDGE