UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

------------------------------------------------------------------x
CHINA THREE GORGES PROJECT CORPORATION, :
:
                              Petitioner, :
: Case No. 04-1510 JJF
   -against- :
:
:
ROTEC INDUSTRIES, INC., :
:
                              Respondent. :
------------------------------------------------------------------x

**PETITION'S REPLY TO RESPONDENT'S RESPONSE
IN OPPOSITION TO PETITIONER'S AMENDED MOTION
FOR ATTORNEYS' FEES, POST-ARBITRATION INTEREST
AND AMENDMENT OF JUDGMENT AMOUNT**

Petitioner China Three Gorges Project Corporation ("Petitioner") hereby replies to Respondent's Response in Opposition to Petitioner's Amended Motion for Attorneys' Fees, Post-Arbitration Interest and Amendment of Judgment Amount ("Respondent's Response"), dated September 1, 2005.

**ATTORNEYS' FEES**

1.    Respondent fails to show why Petitioner should not be awarded attorneys' fees incurred in having its CIETAC award confirmed. One independent basis for Petitioner's request for attorneys' fees related to the confirmation of its arbitral award is that Articles 60 and 63 of the CIETAC Arbitration Rules (the "CIETAC Rules"), which form part of the arbitration agreement, "contemplate binding arbitration that permits a federal court to enter judgment on an arbitration award." Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717 (1967); Von Essen, Inc. v. Marnac, Inc., 2002

U.S. Dist. LEXIS 34, at **19-20 (N.D. Tex. 2002). The arbitration agreement should thus be construed as entitling the winning party to reasonable attorneys' fees incurred during the confirmation process. Von Essen, Inc., 2002 U.S. Dist. LEXIS 34, at **19-20. Respondent fails to address why the Court should not award attorneys' fees to Petitioner on this basis, even if Petitioner grants, *arguendo*, that Article 59 of the CIETAC Rules does not support a construction that attorneys' fees incurred in confirming a CIETAC award should be awarded to the winning party in the arbitration. Petitioner's reliance on the CIETAC Rules for the award of attorneys' fees in the present case is not misplaced.[1]

    2. The $200,000 flat fee Petitioner has already paid its U.S. attorneys for confirming the arbitral award is reasonable in the specific context of this case. While courts often apply the lodestar method in determining the attorneys' fees that may be awarded, courts have discretion to adjust the fee after the initial step of the lodestar calculation. Hensley v. Eckerhart, 461 U.S. 424, 433-434 (1983). The factors courts routinely use in exercising this discretion include, among other things, time and labor required, the customary fee for similar work, and the amount involved and the results obtained. Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974).

---

[1] It should be noted that Respondent's reference to the fact that the CIETAC arbitration award already includes attorneys' fees for Petitioner is both misleading and imprecise in terms of the amount of such award. That Petitioner was already awarded attorneys' fees for the arbitration itself does not at all preclude that Petitioner should also be awarded attorneys' fees for confirming the arbitral award. If anything, the award of attorneys' fees in the arbitral award only strengthens Petitioner's present claim of attorneys' fees before this Court. The attorneys' fees awarded to Petitioner by the arbitrators do not in the least overlap with attorneys' fees at issue here, though the present attorneys' fees arose only because of Respondent's unjustified refusal to abide by the final arbitral award and so should be deemed as an extension of the attorneys' fees directly related to the arbitration itself.

Respondent's statement that the arbitrators' award of attorneys' fees totaled $319,447.84 is also incorrect. Respondent's Response, para. 2. In fact, the arbitral panel only awarded Petitioner RMB ¥800,000 as attorneys' fees, which is below $100,000 even under the present exchange rate between the U.S. Dollar and the RMB. Arbitration Award, Section 3.6.2. Petitioner is not clear about the basis for the number stated by Respondent.

3. Petitioner's U.S. attorneys have to this date spent some 193 hours in pursuing the present litigation, as explained by the accompanying Affidavit of Xiaomin Chen, Esq., sworn to September 6, 2005, annexed hereto as Exhibit A. The value of such time and labor is $45,019.00 based on the firm's customary hourly rates. Combined with $7,437.34 in costs and expenses Petitioner's attorneys have incurred so far in this case,[2] the total amount is $52,456.34 as of September 6, 2005. See Exhibit A. At the time when Petitioner retained its U.S. counsel to confirm its arbitral award in the U.S., the time and labor required for the confirmation could only be an estimate and such an estimate had to include time and labor that would be required to conduct appellate procedures if such procedures became necessary. Given the amount involved (more than $2.5 million in principal alone), it was not unlikely that Respondent would choose to appeal a district court decision favorable to Petitioner and appellate procedures potentially require Petitioner's counsel to spend a significant amount of time and labor.

4. The flat fee arrangement between Petitioner and its counsel covers not only the services of attorneys and their supporting staff would need to render on behalf of Petitioner in relation to all necessary procedures to confirm the arbitral award, but also all the related costs and expenses (including counsel's traveling and lodging expenses if they need to appear before this Court and/or the circuit court) Petitioner's counsel would incur. As flat or percentage legal fee arrangements are the prevailing practice in China,[3] Petitioner strongly desired a flat fee arrangement with its U.S. counsel instead of a fee based strictly on hourly rates so that Petitioner would have the benefit of knowing

---

[2] The costs and expenses include charges from Petitioner's local counsel in Delaware.
[3] The main exception to this practice is that foreign-based companies operating in China more often than not prefer legal fees based on hourly rates since such companies have been accustomed to the hourly rate-based fees in their home countries.

3

beforehand as well as controlling the total amount it has to spend on the confirmation of the arbitral award.

5.  The $200,000 flat fee represents less than 10% of the total amount involved in this litigation and was accepted by Petitioner as a reasonable amount when it was adequately informed of the several options for attorneys' fee arrangement in the U.S. and the potential cost of having the arbitral award confirmed in the U.S. Considering, in addition, that Petitioner's counsel has obtained excellent results for Petitioner, the fee Petitioner already paid to its counsel is reasonable in the specific context of this case. Petitioner thus requests that the Court award $206,175.05 in attorneys' fees to Petitioner.

## POST-ARBITRATION INTEREST

6.  The Court should not follow the flawed decision on post-judgment interest by the Second Circuit in <u>Carte Blanche (Singapore) PTE, Ltd. v. Carte Blanche Int'l, Ltd.</u>, 888 F.2d 260 (2d Cir. 1989), where the court failed to distinguish, as it should have, the confirmation of a domestic arbitration award and that of a non-domestic one. The first chapter of Federal Arbitration Act (the "FAA"), 9 U.S.C. §§1 et seq., deals with the confirmation of *domestic* arbitral awards while the second chapter of the FAA, 9 U.S.C. §§201 et seq., controls the confirmation by U.S. courts of non-domestic arbitral awards. 9 U.S.C. §201 provides that "The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 [the "New York Convention"], shall be enforced in United States courts in accordance with this chapter [9 U.S.C. §§ 201 et seq.]." <u>See also, e.g.</u>, <u>McDermott Int'l v. Lloyds Underwriters of London</u>, 944 F.2d 1199, 1208 (5th Cir. La. 1991).

7.  Although 9 U.S.C. §208 incorporates the first chapter of the FAA, that is

only when a provision in the first chapter "is not in conflict with this chapter [9 U.S.C. §§ 201 et seq.] or the Convention as ratified by the United States." Such a conflict would arise if the Court uses the mandatory post-judgment interest rate under 28 U.S.C. §1961(a) in the present case. Strictly speaking, the arbitral award in this case also includes the post-*arbitration* interest (in comparison with post-*judgment* interest, as will be discussed below) and not merely the principal of the award. The post-arbitration interest is prescribed in the same section in the Arbitration Award which sets forth the principal of the arbitral award[4] and the post-arbitration interest serves the function of ensuring that Petitioner may promptly receive the principal or otherwise obtain a reasonable compensation for the loss of the use of the principal. If the Court were to change the post-arbitration interest rate included in the arbitral award by adopting the rate under 28 U.S.C. §1961(a), the Court would in effect deny the confirmation of a significant part of the arbitral award Petitioner was granted by CIETAC.

8. The only conceivable ground under the New York Convention for this refusal to confirm would be Article V(2)(b), *i.e.*, the confirmation of the award "would be contrary to the public policy" of the United States. Contrary to Respondent's allegation that the 0.021% daily rate provided by CIETAC "is oppressive and unreasonable per se," 0.021% per diem or 7.665% per annum is not oppressive or unreasonable and is not against the public policy of this country. The Court of Chancery of Delaware, for instance, had no trouble affirming post-judgment interest at the rate of 12.5% per annum.

---

[4] Section IV of the Arbitration Award is titled "Award." Subsections IV(1) through IV(6) set forth the principal amount of the arbitral award; Subsection IV(7) sets forth the 45-day period during which Respondent may pay the principal of the award without any interest *and* the 0.021% per diem interest after the 45-day period. The English translation of the Arbitration Award is not totally correct in stating the rate to be "2/10000 per day" [*i.e.*, 0.02%], since the official Chinese version of the Arbitration Award provides 2.1/10,000 [*i.e.*, 0.021%] as the per diem rate.

Neal v. Ala. By-Products Corp., 1994 Del. Ch. LEXIS 8, at *2 (Del. Ch. 1994) (copy annexed hereto as Exhibit B). Petitioner therefore requests that the Court uphold the 0.021% per diem rate for the post-arbitration interest accruing up to the day when Respondent pays the outstanding balance of the arbitral award.

9. Alternatively, if the Court follows Carte Blanche, Petitioner requests that the rate prescribed under 28 U.S.C. 1961(a) be only applied to the time after August 2, 2005, the day when the Court issued its judgment.

10. Under 28 U.S.C. 1961(a), the interest "shall be calculated from the date of the entry of the judgment," which clearly means that such interest is for the period after the district court renders its judgment.[5] The post-arbitration interest that has accrued between May 13, 2004 and August 1, 2005, therefore, should still be calculated at the 0.021% per diem rate prescribed by CIETAC. The post-judgment interest from August 2, 2005 to the day when Respondent pays what it owes to Petitioner under the arbitral award, if this Court does use the rate provided under 28 U.S.C. 1961(a), should be at the rate of 3.77% per annum, as shown in the Federal Reserve Statistical Release for the week ending on July 29, 2005, which is the calendar week preceding the August 2, 2005 judgment. A copy of the Federal Reserve Statistical Release is annexed hereto as Exhibit C.

---

[5] The fact that 28 U.S.C. 1961(a) deals with post-judgment interest also suggests that it is inappropriate to subject post-arbitration interest to 28 U.S.C. 1961(a), whether the arbitral award is domestic or foreign. If courts always disregard the rate provided by arbitrators for post-arbitration interest, that would create the undesirable situation that so long as the mandatory rate under 28 U.S.C. 1961(a) is lower than the rate provided by the arbitrators for the post-arbitration interest, the losing party in an arbitration may actually stand to gain if it refuses to honor the arbitral award unless the winning party also wins a judgment from a court. This could hardly have been what the Congress intended when it enacted 28 U.S.C. 1961(a), and it is certainly against the "strong federal policy favoring arbitration as an alternative means of dispute resolution." Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998).

## **AMENDMENT OF JUDGMENT AMOUNT**

11.     While exchange rates between major currencies of the world do frequently fluctuate in general, this was plainly not the case with the exchange rate between the U.S. Dollar and the RMB before July 21, 2005.  Petitioner asks the Court to take judicial notice of the undisputable fact that before July 21, 2005, when the Chinese government unexpectedly adjusted the exchange rate between the U.S. Dollar and the RMB, the exchange rate between these two currencies had remained remarkably constant during the previous decade.  Petitioner could not possibly have predicted the significant change of exchange rate that occurred on July 21, 2005.  Petitioner's request for the Court to adjust the judgment amount accordingly does not prejudice Respondent, even though such request was not made to the Court immediately after July 21, 2005.  The unexpected change of exchange rate between the U.S. Dollar and the RMB would not have become an issue had Respondent promptly honored its obligations under the arbitral award, and Respondent must be held responsible for the consequences of the appreciation of the RMB against the U.S. Dollar.

WHEREFORE, Petitioner respectfully requests that the Court amend the judgment amount and award Petitioner attorneys' fees and post-arbitration interest as Petitioner has requested in its motion filed on August 18, 2005.

Dated: September 6, 2005

          PRICKETT, JONES & ELLIOTT, P.A.

          _____
          John W. Paradee, Esq. (ID #2767)
          D. Benjamin Snyder, Esq. (ID #4038)
          11 North State Street
          Dover, Delaware 19901
          Tel.: (302) 674-3841

          and

          DEHENG CHEN CHAN, LLC
          Matthew C. Gruskin, Esq. (ID # 8749)
          Appearing Pro Hac Vice
          225 Broadway, Suite 1910
          New York, NY 10007
          Tel.: (212) 608-6500

          *Attorneys for China Three Gorges*
          *Project Corporation*

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------x
CHINA THREE GORGES PROJECT CORPORATION, :
:
Petitioner, :
: Case No. 04-1510 JJF
-against- :
:
:
ROTEC INDUSTRIES, INC., :
:
Respondent. :
---------------------------------------------------------------x

## CERTIFICATE OF SERVICE

I, D. BENJAMIN SNYDER, hereby certify that on this 6th day of September, 2005, I caused two copies of the foregoing Petitioner's Reply to Respondent's Response in Opposition to Petitioner's Amended Motion for Attorneys' Fees, Post-Arbitration Interest and Amendment of Judgment Amount to be e-filed and sent via U.S. Mail, postage prepaid, to the following:

Richard W. Pell, Esquire
Susan A. List, Esquire
Tybout, Redfearn & Pell
300 Delaware Avenue, 11th Floor
P.O. Box 2092
Wilmington, Delaware 19899

**PRICKETT, JONES & ELLIOTT, P.A.**

BY: /s/ D. Benjamin Snyder
John W. Paradee, Esquire (ID #2767)
D. Benjamin Snyder, Esquire (ID #4038)
11 North State Street
Dover, Delaware 19901
(302) 674-3841
*Attorneys for China Three Gorges Project Corporation*

19390.1\282439v1